# STATE OF LOUISIANA
# SECRETARY OF STATE

LEGAL SERVICES SECTION
P.O. BOX 94125, BATON ROUGE, LA 70804-9125
(225) 922-0415

11/12/09

CONTINENTAL CASUALTY COMPANY
C/O CNA INSURANCE COMPANIES
MR. JONATHAN D. KANTOR
333 S. WABASH, 43S, CNA CENTER
CHICAGO, IL 60685

REC'D NOV 16 2009

SUIT NO: 094013
4TH JUDICIAL DISTRICT COURT
PARISH OF OUACHITA

ALLIED BUILDING STORES INC
vs
CONTINENTAL CASUALTY COMPANY ET AL

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.
Please call the attorney that filed this document if you have any questions
regarding this proceeding. If you received this document in error, please
return it to the above address with a letter of explanation.

Yours very truly,

JAY DARDENNE
Secretary of State

Served on: JAY DARDENNE          Date:  11/10/09 at  3:00 PM
Served by: J BROWN               Title: DEPUTY SHERIFF

================================================================================
Received     Number      Date        Paid By                 Amount
CHECK/M.O.   128894      11/04/09    COC (OUACHITA)          25.00

KA
================================================================================

# NO. 737897




EXHIBIT A

STATE OF LOUISIANA * PARISH OF OUACHITA
FOURTH JUDICIAL DISTRICT COURT

ALLIED BUILDING STORES, INC.

VS. NO. 09-4013

CONTINENTAL CASUALTY COMPANY and
COBBS, ALLEN & HALL OF LOUISIANA, INC.

FILED: OCT 3 0 2009

KATHERINE R. BOYD

BY: _____
Deputy Clerk of Court

## PETITION

The petition of ALLIED BUILDING STORES, INC. (hereinafter referred to as "ABS"), a Texas corporation authorized to do and with its principal place of business in Ouachita Parish, Louisiana, respectfully represents:

1.

The following parties are made defendants herein:

A. CONTINENTAL CASUALTY COMPANY (hereinafter referred to as "CCC"), a foreign insurance corporation authorized to do and doing business in the State of Louisiana, which has appointed the Louisiana Secretary of State as its registered agent for service of process; and

B. COBBS, ALLEN & HALL OF LOUISIANA, INC. (hereinafter referred to as "Agency"), a Louisiana corporation authorized to do and doing business in the State of Louisiana, with its principal place of business located at 6425 Youree Drive, Suite 290, Shreveport, Louisiana 71105, which may be served through its registered agent for service of process, Mike Knotts, 6425 Youree Drive, Suite 290, Shreveport, Louisiana 71105.

2.

Upon information and belief, petitioner shows that "Agency" was an insurance agent/broker routinely engaged in the business of marketing, selling and processing insurance to customers such as ABS, through "CCC".

3.

Petitioner shows that on July 8, 2002, "CCC" issued to petitioner a commercial crime policy bearing policy number 169893069, with effective dates of July 1, 2002 through July 1, 2005. This policy was issued through AON Risk Services, Inc. of Texas.

4.

On July 1, 2005, the commercial crime policy bearing policy number 169893069 was renewed through "Agency" with an effective policy period of July 1, 2005 through July 1, 2008.

5.

On July 1, 2008, "Agency" obtained a crime pack policy application from petitioner for the

renewal of coverage. Pursuant to the application, the crime pack policy coverage was renewed from July 1, 2008 through July 1, 2009.

6.

Upon information and belief, petitioner shows that "Agency" was their insurance agent/broker, routinely engaged in the marketing, selling and processing of crime pack policies for and on behalf of "CCC".

7.

The crime pack policy in question, with a policy period of July 1, 2008 through July 1, 2009, was purchased through "Agency", who at all times was acting as the agent/broker of petitioner. As such, "Agency" had an obligation and duty to inform, advise and educate petitioner about the coverage and exclusions contained in the policy "Agency" was selling ABS.

8.

At the time the crime pack policy went into effect on July 1, 2008, petitioner was in business as a building material dealer with its principal place of business in Monroe, Ouachita Parish, Louisiana. Further, petitioner employed approximately 125 employees at the time.

9.

Defendants sold and maintained the above policy and made both verbal and written assurances and commitments that petitioner would be entitled to coverage and reimbursement under the crime pack policy in the event of a covered loss.

10.

In the later part of September and/or early part of October of 2008, an unusual endorsement of a check was discovered and brought to the attention of ABS management. An internal investigation, which included reconciling all activity in the block buy account for 2006 through 2008, revealed checks totaling $201,914.77 issued to a fictitious vendor. Local authorities were contacted and an employee was arrested as a suspect in relation to the theft. Thereafter, "Agency" was contacted about the loss and a claim was made in April of 2009.

11.

On April 23, 2009, defendant "CCC" denied coverage under the crime pack policy issued to ABS for any loss arising from the particular employee theft in question.

12.

ABS, through their president Laddie Woods, appealed their decision on coverage to no avail

as defendants still denied coverage under the policy.

13.

Defendant, "CCC", has arbitrarily, capriciously and without just and probable cause failed and refused to pay crime pack policy benefits under the terms and conditions of the policy of insurance referenced herein.

14.

Defendant, "CCC", has arbitrarily, capriciously and without just or lawful cause engaged in a pattern of dilatory tactics designed to impede, delay and prevent petitioner from receiving policy benefits under the terms and conditions of the policy in question.

15.

Petitioner has fully and completely cooperated with all reasonable requests made by defendants; nevertheless, defendants have consistently and continuously failed and refused to pay petitioner the crime pack policy benefits due them under the terms of their insurance policy.

16.

As a result of the afore-stated arbitrary and capricious failure and refusal of the defendants to pay the policy benefits under the terms and conditions of the crime pack policy, petitioner has retained the services of counsel of record to represent them regarding this matter.

17.

In this case, "CCC" claims there was a termination of coverage as respect to the act of the employee in question. "CCC" contends that coverage with respect to the employee in question was terminated under the crime pack policy Section IV, Conditions, U. <u>Termination of Coverage as Respects Acts of Any Employee:</u>

> <u>Coverage as respects any "employee" is terminated:</u>
> <u>a. Immediately upon discovery by you or any of your partners, "members", "managers", officers, directors, or trustees, not in collusion with the "employee" of any dishonest act committed by that employee while employed by you, or prior to becoming employed by you, provided dishonest acts committed prior to being employed by you resulting in a loss equal to or exceeding $10,000."</u>

In essence, "CCC" indicates that the crime pack policy coverage terminated as to the employee in question the moment petitioner knew of any dishonest acts committed prior to their employment resulting in a loss equal to or exceeding $10,000. See "CCC" letter to Laddie Woods dated May 20, 2009 attached as Exhibit "A".

18.

Although the employee's July 31, 1994 application for employment with ABS indicates he had been convicted of a crime of fraud in 1987, the application makes no reference to the amount of money that was involved. Neither Mr. Woods nor any other representative of petitioner were aware of the amount involved in the employee's prior fraud conviction. Therefore, the "CCC" policy exclusion requiring that the insured have knowledge of a prior dishonest act equal to or exceeding $10,000 was not met. In this case, petitioner did not have the requisite knowledge of the amount of the employee's prior dishonest act.

19.

The policy in question can reasonably be interpreted in more than one way. With more than one interpretation, there is ambiguity in this exclusionary language and the insurance contract should be strictly construed against "CCC" and in favor of coverage for petitioner.

20.

In the process of obtaining the application for the crime pack policy, "Agency" did not point out, make known, or in any way discuss the policy exclusion(s) relied on by "CCC". "Agency" should have, at the very least, noted the exclusion during the application process to the employer of 125 employees. The application is void of any question as to the knowledge of a prior dishonest act of an employee equal to or exceeding $10,000. Therefore, without that information being pointed out and discussed by "Agency" with ABS, petitioner had no way of knowing about the exclusion and whether it would apply to his employees.

21.

While at all times alleging there is full coverage for the loss in question under the "CCC" crime pack policy, in the alternative, petitioner shows that "Agency" is liable for failing to inform, obtain consent, educate, and fully advise petitioner about the terms of coverage and policy exclusions and, in particular, the exclusion(s) in question with reference to knowledge of an employee's prior dishonest act equal to or exceeding $10,000. Since this question was not in the crime pack policy application, petitioner had no way of knowing it was a material provision and exclusion of the policy. Therefore, "Agency's" failure to bring this to petitioner's attention was negligent. This information should have been brought to petitioner's attention by "Agency" and appropriately addressed at the time of the application. This did not happen and petitioner relied to their detriment on the negligent advice/omission of "Agency", believing they had full coverage under the crime pack

policy for all employees, when, in fact, coverage has now been denied because "Agency" did not fully disclose the material terms, conditions and exclusions of the policy which prohibited petitioner from making an informed decision and taking appropriate action at the time of the application.

22.

As a result, defendants "CCC" and "Agency" are liable jointly, severly, and *in solido* for all damages suffered by petitioner in addition to penalties, together with reasonable attorneys fees in accord with the provisions of LSA-R.S. 22:657, 658 and the full amount of the loss of $201,914.77 in addition to legal interest thereon from date of judicial demand until paid and all costs of these proceedings.

23.

Defendants have breached their duties and obligations which they owe to petitioner and are legally liable as a result.

24.

Petitioner prays for a trial jury on all issues.

WHEREFORE, PETITIONER, ALLIED BUILDING STORES, INC., PRAYS for judgment in its favor and against defendants, CONTINENTAL CASUALTY COMPANY and COBBS, ALLEN & HALL OF LOUISIANA, INC., *in solido* as follows:

A. For judgment declaring petitioner to be entitled to $201,914.77 under the crime pack policy;
B. For penalties and attorneys fees under the provisions of LSA-R.S. 22:657, 658 and any other applicable law;
C. For legal interest thereon from date of judicial demand until paid and for all costs of these proceedings; and
D. For all general, equitable, jurisprudential and statutory relief to which petitioner may be entitled under the laws of the State of Louisiana in the United States of America.

Respectfully submitted,

HUDSON, POTTS & BERNSTEIN, LLP
1800 Hudson Lane, Suite 300
Post Office Drawer 3008
Monroe, Louisiana 71210-3008
Telephone 318/388-4400; Facsimile 318/322-4194

BY: CHARLES W. HEROLD, III - Bar No. 17298
Attorney for Allied Building Stores, Inc.

*PLEASE SERVE:*

*Continental Casualty Company*
*through their registered agent for service of process,*
*Louisiana Secretary of State*

*Cobbs. Allen & Hall of Louisiana, Inc.*
*Through their registered agent for service of process,*
*Mike Knotts*
*6425 Youree Drive, Ste 290*
*Shreveport, LA 71105*



CERTIFIED TRUE COPY

NOV - 2 2009

DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT
OUACHITA PARISH, LA



5/20/2009

Laddie Wood
Allied Building Stores, Inc.
P.O. Box 8030
Monroe, LA 71211

<u>Christine Gargano</u>
Claims Specialist
Commercial Account Claim
Telephone: 609-860-2339
Facsimile: 609-655-6614
1249 South River Road,
Cranbury, NJ 08512
E-Mail: <u>Christine.Gargano@cna.com</u>

Insured: Allied Building Stores, Inc.
Claimant: Christopher McHenry
Policy No: 169893069
Policy Period: 7/1/8 – 7/1/09
Claim No: SM000804
Carrier: Continental Casualty Company (hereafter "CCC")

Dear Mr. Wood:

This letter will serve as response to your letter dated May 6, 2009 disputing the coverage decision issued by CCC. You requested the information that we obtained to confirm that the prior theft acts of Christopher McHenry exceeded the $10,000 threshold noted on the policy language. The information received was provided by the Western District Federal Courthouse in Shreveport, LA. The Deputy Clerk provided the following:

<u>Case # 30019-01, Filed on 10/1/1988 United States of America vs. Christopher McHenry.</u>

The case record states that Christopher McHenry was charged with 2 counts of embezzlement from People's Homestead Federal Bank. Count I embezzling and misapplying $6,030 of funds, Count II embezzling and misapplying $12,192.68 of funds totaling $18,222.68 of both charges. He was sentenced to 5 years probation.

I direct your attention to the policy language listed below from the coverage position issued on April 22, 2009.

<u>Coverage Analysis</u> Please accept this letter as a denial of coverage for the reasons set forth herein.

We would like to begin by calling your attention to the section of your policy that is entitled IV. Conditions. U. <u>Termination of Coverage as Respects Acts of Any Employee:</u>

>Coverage as respects any "employee" is terminated:
>a. immediately upon discovery by you or any of your partners, "members," "managers," officers, directors or trustees, not in collusion with the "employee", of any dishonest act committed by that

www.CNA.com

**EXHIBIT A**

        "employee" while employed by you, or prior to becoming employed by you, provided dishonest acts committed prior to being employed by you resulting in a loss equal to or exceeding $10,000.
    b. On the date specified in the notice mailed to the Named Insured. That date will be at least 60 days after the date of mailing.

In review of the documentation that was submitted CCC would like to call your attention to the Application of Employment for Christopher McHenry. McHenry applied for employment with the Insured on July 31, 1994 and did state to the Insured that he was previously convicted with a felony charge due to fraud. McHenry was terminated from his previous employer of People's Homestead for the acts of fraud. Since the Insured was aware of his previous dishonest acts, as per the above policy provision, coverage for McHenry is cancelled. Therefore, there is no coverage available for any losses sustained as a result of McHenry's conduct.

Based upon the foregoing, it does not appear necessary to identify any additional bases which may also limit or preclude coverage. Should you have any additional information that you believe has a bearing on coverage, please forward such information to my attention for review and evaluation.

The above discussion is based upon information furnished to date and is by necessity subject to supplementation. No statement herein should be considered a waiver of any right, defense or privilege that CCC may have under the policy or law, regardless of whether the provision has been noted herein. Please note that all rights remain fully reserved.

Should you have any additional questions or concerns, please do not hesitate to contact me at (609) 860-2339 or via email: Christine.Gargano@cna.com.

Very truly yours,

Christine Gargano/FAC
Christine Gargano
Claims Specialist

    cc:    Kelly Lorenzo, Cobbs, Allen & Hall