RECEIVED
IN MONROE, LA

SEP 29 2010
Ac
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ALLIED BUILDING STORES, INC. | CIVIL ACTION NO. 09-02023 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CONTINENTAL CASUALTY CO., ET AL. | MAG. JUDGE MARK HORNSBY |

RULING

Pending before the Court are a Motion to Remand [Doc. No. 13] and a Motion for Discovery and Stay [Doc. No. 30] filed by Plaintiff Allied Building Stores, Inc. ("ABS"). For the following reasons, the Motion to Remand is GRANTED, and the Motion for Discovery and Stay is DENIED AS MOOT.

I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute over a commercial crime insurance policy which arose after an ABS employee allegedly stole $201,914.77 from it.

In September 1999, ABS submitted an application for a commercial crime insurance policy through the insurance agency/broker AON Risk Services, Inc. of Texas ("AON"). AON procured a commercial crime insurance policy, issued by Continental Casualty Company ("Continental") and effective July 1, 1999, to July 1, 2002 ("1999 Policy").

On July 8, 2002, ABS submitted a second application for a commercial crime insurance policy through AON. Continental issued ABS a renewed policy, effective July 1, 2002, to July 1, 2005 ("2002 Policy").

In 2005, Defendant Cobbs, Allen & Hall of Louisiana ("CAH") became ABS' insurance agency/broker of record and renewed the 2002 Policy to extend coverage from July 1, 2005, to July

1, 2008, without an application ("2005 Policy").

The 1999, 2002, and 2005 Policies provided identical coverage and contained a cancellation of coverage clause, which stated, in pertinent part:

> Cancellation As To Any Employee: This insurance is cancelled as to any 'employee':
>
> a. Immediately upon discovery by:
>
> > (1) You; or
> >
> > (2) Any of your partners, officers or directors not in collusion with the 'employee'; of any dishonest act committed by that 'employee' whether before or after becoming employed by you. But, this section does not apply to dishonest acts committed by any 'employee' before becoming employed by you unless such dishonest acts involved 'money', 'securities' or 'property other than money or securities' valued at more than $1000.00.

[Doc. No. 20-3, Exhibit B].

ABS alleges in paragraph ten of its Petition that "[i]n the later part of September and/or early part of October of 2008, an unusual endorsement of a check was discovered and brought to the attention of ABS management. An internal investigation . . . revealed checks totaling $201,914.77 issued to a fictitious vendor. Local authorities were contacted and an employee was arrested as a suspect in relation to the theft." [Doc. No. 1-1, ¶ 10].

On October 28, 2008, the President of ABS, Laddie Woods ("Woods"), submitted an application through CAH to Continental for a new commercial crime insurance policy. The same day, Continental issued ABS a policy with retroactive coverage, effective July 1, 2008, to July 1, 2009 ("2008 Policy"). The 2008 Policy had a more narrow cancellation of coverage clause than the

1999, 2002, and 2005 Policies.[1]

Sometime thereafter, ABS submitted a claim under the 2008 Policy for the $201,914.77 loss. On April 23, 2009, Continental denied ABS' claim based on what Continental contends was "ABS' admitted knowledge of a 1987 fraud conviction disclosed by the employee in a 1994 employment application with ABS." [Doc. No. 20, p. 7].

Woods avers that ABS was not provided a copy of the 2008 Policy until August 28, 2009, when CAH forwarded a copy to ABS' counsel.

On October 30, 2009, ABS filed suit against Continental and CAH in state court. ABS alleged that Continental wrongfully denied its claim under the 2008 Policy and, in the alternative, that CAH was negligent. The parties do not seem to dispute that ABS attempts to assert causes of action for breach of fiduciary duty and negligent misrepresentation against CAH. Specifically, ABS alleged as to CAH that:

> 9.
> [Continental and CAH] sold and maintained the [2008 Policy] and made both verbal and written assurances and commitments that petitioner would be entitled to coverage and reimbursement under the [2008 Policy] in the event of a covered loss.
>
> . . .

---

[1]The 2008 Policy states, in pertinent part:

"Coverage as respects any 'employee' is terminated:

a. immediately upon discovery by you or any of your partners, 'members', 'managers', officers, directors or trustees, not in collusion with the 'employee', of any dishonest act committed by that 'employee' while employed by you, or prior to becoming employed by you, provided dishonest acts committed prior to being employed by you resulted in a loss equal to or exceeding $10,000."

[Doc. No. 20-2, Exhibit A].

3

20.

In the process of obtaining the application for the [2008 Policy], [CAH] did not point out, make known, or in any way discuss the policy exclusion(s) relied on by [Continental]. [CAH] should have, at the very least, noted the exclusion during the application process to the employer of 125 employees. The application is void of any question as to the knowledge of a prior dishonest act of an employee equal to or exceeding $10,000. Therefore, without that information being pointed out and discussed by [CAH] with ABS, petitioner had no way of knowing about the exclusion and whether it would apply to his employees.

21.

While at all times alleging there is full coverage for the loss in question under the [2008 Policy], in the alternative, petitioner shows that [CAH] is liable for failing to inform, obtain consent, educate, and fully advise petitioner about the terms of coverage and policy exclusions and, in particular, the exclusion(s) in question with reference to knowledge of an employee's prior dishonest act equal to or exceeding $10,000. Since this question was not in the [2008 Policy] application, petitioner had no way of knowing it was a material provision and exclusion of the policy. Therefore, [CAH's] failure to bring this to petitioner's attention was negligent. This information should have been brought to petitioner's attention by [CAH] and appropriately addressed at the time of the application. This did not happen and petitioner relied to their detriment on the negligent advice/omission of [CAH], believing they had full coverage under the [2008 Policy] for all employees, when, in fact, coverage has now been denied because [CAH] did not fully disclose the materials terms, conditions and exclusions of the [2008 Policy] which prohibited petitioner from making an informed decision and taking appropriate action at the time of the application.

[Doc. No. 1-1, ¶¶ 9, 20, & 21].

On December 7, 2009, Continental removed the case to this Court on the basis of diversity jurisdiction. The parties do not dispute that, for purposes of diversity jurisdiction, ABS is a citizen of Louisiana and Texas, CAH is a citizen of Louisiana, and Continental is a citizen of Illinois.

On January 7, 2010, ABS filed a Motion to Remand [Doc. No. 13]. Continental filed a Memorandum in Opposition [Doc. No. 20], and ABS filed a Reply [Doc. No. 22]. ABS asserts that this case should be remanded to state court because ABS and CAH are not diverse and/or CAH is a citizen of Louisiana, the state in which this suit was filed. Continental contends that this Court has

diversity jurisdiction and that the citizenship of CAH should be disregarded because CAH was improperly joined as a defendant.

On August 26, 2010, ABS filed a Motion for Discovery and Stay [Doc. No. 30]. Continental and CAH filed a Joint Memorandum in Opposition [Doc. No. 34], and ABS filed a Reply [Doc. No. 35]. ABS requests that the Court stay its ruling on its Motion to Remand until ABS deposes CAH broker Kelly Lorenzen ("Lorenzen"). ABS believes Lorenzen's deposition will assist the Court in finding that this case should be remanded. Continental and CAH contend that Lorenzen's deposition is not necessary to rule on ABS' Motion to Remand and that ABS' request is untimely.

## II. LAW AND ANALYSIS

### A. Improper Joinder

Under 28 U.S.C. § 1441, a defendant may remove a case from state court on the basis of a federal court's diversity jurisdiction. A court lacks diversity jurisdiction when any plaintiff and any defendant are citizens of the same state, or when the matter in controversy is $75,000 or less. *See* 28 U.S.C. § 1332. A case may not be removed from state court if the federal court's original jurisdiction is based on diversity and a properly joined defendant is a citizen of the state in which the action is brought. § 1441(b). It is undisputed that ABS and CAH are both citizens of Louisiana and this case was initially filed in Louisiana. Therefore, if CAH is a proper defendant, this Court lacks jurisdiction.

"[U]nder the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined nondiverse and/or in-state defendant."

5

*Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006) (citation omitted).[2] To establish improper joinder, the removing party must prove either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Boone v. Citigroup, Inc.*, 416 F.3d 382, 389 (5th Cir. 2005) (internal quotation marks and citation omitted). As to the second inquiry, "[t]he court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. This means that there must be a reasonable possibility of recovery, not merely a theoretical one." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (internal citations omitted).

The burden of proving improper joinder is on the removing party. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Id.* "[The Court] must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party[,] then . . . determine whether that party has any possibility of recovery against the party whose joinder is questioned." *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

"In many instances, [the Fifth Circuit has] cautioned against pretrying a case to determine removal jurisdiction, [but has also] stat[ed] that fraudulent joinder claims can be resolved by piercing the pleadings and considering summary judgment-type evidence such as affidavits and deposition testimony." *Hart v. Bayer Corp.*, 199 F.3d 239, 246-47 (5th Cir. 2000) (internal quotation marks and citation omitted). In this way, "[t]he scope of the inquiry for fraudulent joinder . . . is broader

---

[2]"The Fifth Circuit now officially refers to 'fraudulent joinder' as 'improper joinder.' *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term 'fraudulent joinder' is still used in many Fifth Circuit cases, causing no shortage of confusion." *Trovic, LLC, v. Axis Surplus Ins. Co.*, 07-7929, 2008 WL 474224, at *3 n.11 (E.D. La. Feb. 14, 2008).

than that for [Federal Rule of Civil Procedure] 12(b)(6)." *Ross*, 344 F.3d at 461.

## B. Application

First, Continental argues that ABS' claims are perempted. In the alternative, Continental argues that, even if ABS' claims against CAH are timely, ABS cannot establish a cause of action for either breach of fiduciary duty or negligent misrepresentation against CAH. Because the Court finds a reasonable possibility that ABS' claims are not perempted and that ABS can establish a cause of action for breach of fiduciary duty against CAH, the Court finds that CAH was not improperly joined and that the Court lacks jurisdiction to hear this case.

### i. *Peremption*

Louisiana Revised Statutes § 9:5606(A) states, in pertinent part:

> No action for damages against any insurance agent[] [or] broker . . ., whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

"The one-year and three-year periods of limitation . . . are peremptive periods . . . and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended." LA. REV. STAT. § 9:5606(D). Under the one-year period of limitation, the limitations period commences the date that the claimant discovered or should have discovered the alleged act, omission, or neglect. § 9:5606(A). The one-year period of limitation requires only constructive knowledge of the alleged act, omission, or neglect. *See Argonaut Great Cent. Ins. Co. v. Hammet*, 44-308-CA (La. App. 2 Cir. 6/3/09), 13 So.3d 1209, 1213. "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to

7

knowledge or notice of everything to which a reasonable inquiry may lead." *Campo v. Correra*, 2001-C-2707 (La. 6/21/02), 828 So.2d 502, 510-11. Construing the Petition in favor of ABS, the Court finds that there is a reasonable possibility that ABS's claims against CAH are not perempted.

ABS filed suit on October 30, 2009. Therefore, under the one-year period of limitation, ABS must have had actual or constructive knowledge of CAH's alleged act, omission, or neglect, at the earliest, on October 30, 2008. Under the three-year period of limitation, CAH's alleged act, omission, or neglect must have occurred, at the earliest, on October 30, 2006.

In both cases, to determine whether ABS' claims are perempted, the Court must identify what alleged act, omission, or neglect by CAH gave rise to ABS' claims. ABS identifies CAH's "representations made to [ABS] when CAH was instructed to obtain a new policy for the 2008-2009 coverage period." [Doc. No. 22-1, p. 2]. In its Petition, ABS alleges that CAH "made both verbal and written assurances and commitments that petitioner would be entitled to coverage and reimbursement under the [2008 Policy] in the event of a covered loss." [Doc. No. 1-1, ¶ 9]. Unquestionably, the alleged assurances and commitments, if they occurred at all, occurred sometime in 2008. Regardless of when in 2008 the alleged assurances and commitments occurred, ABS asserts that it did not know and should not have known that CAH breached its fiduciary duty or made negligent misrepresentations until ABS received a copy of the 2008 Policy on April 28, 2009. Continental disputes ABS' allegation and alleges that "[a] copy of the 2008 Policy was delivered to ABS on October 30, 2008." [Doc. No. 20, p. 6]. Even if Continental is correct, ABS filed suit within one year of the date it alleges ABS obtained knowledge or constructive knowledge of the employee cancellation clause, which is within the peremptive period.

However, Continental contends that ABS knew or should have known at the time it filled out

8

the application for the 2008 Policy that the 2008 Policy contained a cancellation of coverage clause because the 1999, 2002, and 2005 Policies contained similar clauses. The Court disagrees. Construing the Petition along with Woods' affidavit in favor of the non-removing party, it appears that ABS filled out the application for the 2008 Policy after it discovered the employee theft.[3] It also appears that CAH assured ABS that the 2008 Policy, applied retroactively, would cover ABS' loss.

Continental also contends that, even if CAH's alleged act, omission, or neglect occurred in 2008, ABS knew or should have known that the 2008 Policy would not cover its loss, at the latest, on October 28, 2008, when Woods signed an application for the 2008 Policy. Continental argues that the application contained questions related to employee dishonesty and that such questions gave ABS constructive notice that the 2008 Policy may not provide coverage for the $201,914.77 loss. The Court is not persuaded because it must construe this question in favor of the non-removing party. *Dodson*, 951 F.2d at 42. Because October 30, 2008, is within the one-year period of limitation and any date in 2008 is within the three-year period of limitation, ABS' claims against CAH are not perempted.

Finally, Continental cites *Trovic, LLC, v. Axis Surplus Ins. Co.*, No. 07-7929, 2008 WL 474224 (E.D. La. Feb. 14, 2008), for the proposition that CAH's alleged act, omission, or neglect occurred in July 2005, when ABS first obtained coverage under the 2005 Policy, because it had a similar cancellation of coverage clause to the 2008 Policy. Under Continental's line of reasoning, the 2008 Policy was simply a renewal of the 2005 Policy, and renewals do not restart the peremptive periods under § 9:5606(A).

---

[3]The Petition states that CAH "obtained" an application to renew the 2005 Policy from ABS on July 1, 2008. [Doc. No. 1-1, ¶ 5]. However, it is undisputed that ABS submitted the application to renew the 2008 Policy on October 28, 2008. *See* [Doc. No. 20, p. 5].

9

In *Trovic*, a plaintiff sued its commercial property insurer and an insurance agency that procured its commercial property insurance policy. *Id.* at *1. The agency first procured the policy in August 2004. *Id.* The policy, effective August 2004 to August 2005, provided coverage for damage to the plaintiff's leased building and personal property. *Id.* The policy included an eighty (80) percent co-insurance clause and listed only the plaintiff as an insured. *Id.* On July 19, 2005, the agency notified the plaintiff that it had to renew the policy by August 2005 and that it could obtain additional business income insurance as part of its renewal. *Id.* The plaintiff renewed the policy, extending coverage from August 2005 to August 2006, and also purchased business income insurance. *Id.* In August 2005, Hurricane Katrina damaged the plaintiff's property. *Id.* The plaintiff filed a claim with the insurer in October 2005, but the insurer did not pay plaintiff the full limits of the policy. *Id.* In August 2007, the plaintiff filed suit against the insurer and the agency. *Id.* The plaintiff alleged that the agency "repeatedly assured [the plaintiff] . . . that it would procure sufficient insurance to cover their business operations at all relevant times" and failed to advise "[the plaintiff] about the amount and type of insurance necessary for a commercial location and that its . . . policy contained a coinsurance requirement." *Id.* The plaintiff further alleged that "it did not learn until October 2006 that the building owner had not been included as an insured and that it would not be able to recover its policy limits because it failed to satisfy the 80 percent co-insurance provision." *Id.*

The Eastern District of Louisiana held that the plaintiff's claims were perempted under § 9:5606. *Id.* at *4. The court noted that "[s]ubsequent renewals of insurance policies do not restart the peremptive period on torts committed at the time of initial purchase. Renewals can, however, restart the prescriptive basis when the complained of conduct . . . consist[s] of separate and distinct

acts, each of which gives rise to immediately apparent damages." *Id.* at *5 (alteration in original) (internal quotation marks omitted) (citing *Biggers v. Allstate Ins. Co.*, 04-CA-282 (La. App. 5 Cir. 10/26/04), 886 So.2d 1179, 1182-83; *Bel v. State Farm Mut. Auto. Ins. Co.*, 02-1292 (La. App. 1 Cir. 2/14/03), 845 So.2d 377, 382-83; and *Bordelon v. Indep. Order of Foresters*, 05-2640, 2005 WL 3543815, at *3 (E.D. La. Oct. 4, 2005)). The court found that the actions of the agency at the time of renewal in August 2005 did not constitute an act separate from the initial policy procurement in August 2004, because "[o]ther than the addition of the business income insurance in August 2005, there [was] no suggestion that the terms of [plaintiff's] policy changed" and plaintiff did not bring a claim relating to its business income insurance. *Id.*

While *Trovic* is not binding on this Court, this case is distinguishable. First, ABS does not allege that CAH committed a tort at the time ABS first obtained coverage under the 2005 Policy. Rather, the basis of ABS' claims against CAH are that CAH made assurances and commitments to ABS that it was entitled to coverage under the 2008 Policy. Notably, the alleged assurances and commitments may have occurred after the 2008 Policy's retroactive coverage date of July 1, 2008. Construing the Petition in favor of ABS, this is not a case where an insurance policy was renewed without an agency consulting with an insured on the policy's breadth of coverage, including coverage of terms that are pertinent to the suit. Second, the *Trovic* court does not indicate whether the plaintiff's renewal of its policy required that it submit a new application. In this case, unlike renewal of the 2002 Policy, renewal of the 2005 Policy required that ABS submit a new application.

For these reasons, the Court finds that there is a reasonable possibility that ABS' claims against CAH are not perempted.

### ii. *Breach of Fiduciary Duty*

Continental argues, in the alternative, that ABS has no cause of action against CAH and, thus, CAH was improperly joined.

"Under Louisiana law, an insurance broker has a fiduciary responsibility to the insured as well as to the insurer, and he is liable for his own fault or neglect." *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (citing *Neustadter v. Bridges*, 406 So.2d 738, 741 (La. App. 1981)). "In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured." *Id.* at 229-30 (citations omitted). When an insurance agent is aware of a client's specific needs, his fiduciary duties may expand to a "guarantee that the policy which he acquires meets at least the insured's *specific* needs, rather than generally insuring the client against a broad range of contingencies." *Id.* at 230 (emphasis in original).

The Court finds that there is a reasonable possibility that ABS has established a cause of action for breach of fiduciary duty against CAH.

In paragraph nine of its Petition, ABS alleges that CAH "sold and maintained the [2008 Policy] and made both verbal and written assurances and commitments that petitioner would be entitled to coverage and reimbursement under the [2008 Policy] in the event of a covered loss." [Doc. No. 1-1, ¶ 9]. In the next paragraph, ABS describes how, in late September and/or early October 2008, it discovered that an employee stole $201,914.77. These allegations, combined with

12

the fact that CAH's alleged assurances and commitments (as they relate to the 2008 Policy) likely occurred after ABS discovered the employee's theft, indicate that ABS' intent was to allege that CAH undertook to procure an insurance policy that covered the employee's theft. Paragraphs twenty and twenty-one contain allegations that CAH failed to notify ABS that it did not procure coverage for its loss. Finally, the alleged assurances and commitments warrant ABS' assumption that it was properly insured for its loss.

Continental contends that ABS has not stated a claim for breach of fiduciary duty because "[n]owhere in ABS' Petition does it allege that CAH failed to obtain insurance specifically requested." [Doc. No. 20, p. 19] (citing *Dobson v. Allstate Ins. Co.*, No. 06-0252, 2006 WL 2078423 (E.D. La. July 21, 2006)). While ABS does not specifically allege in paragraphs twenty and twenty-one of the Petition that it requested that the 2008 Policy cover its employee's theft or that CAH informed ABS that it would be covered, the Court must consider the Petition as a whole and in a light most favorable to the non-removing party. When the Court considers paragraphs twenty and twenty-one with paragraphs nine and ten of the Petition, ABS' allegations are broad enough to include a request that the 2008 Policy cover its employee's theft and that CAH informed ABS that it would be covered.

Because there is a reasonable possibility that ABS has established a cause of action for breach of fiduciary duty against CAH, this Court lacks jurisdiction over this case. The Court need not decide whether ABS has also established a cause of action for negligent misrepresentation. Therefore, ABS' Motion to Remand is GRANTED, and ABS' Motion for Discovery and Stay is DENIED AS MOOT.

## III.  CONCLUSION

For the foregoing reasons, ABS' Motion to Remand [Doc. No. 13] is GRANTED, and this case is REMANDED to the Fourth Judicial District Court for the Parish of Ouachita. Furthermore, ABS' Motion for Discovery and Stay [Doc. No. 30] is DENIED AS MOOT.

MONROE, LOUISIANA, this 29 day of September, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE